KEKER, VAN NEST & PETERS LLP
BENJAMIN BERKOWITZ - # 244441
bberkowitz@keker.com
CHRISTINA LEE - # 314339
clee@keker.com
IAN KANIG - # 295623
ikanig@keker.com
SPENCER MCMANUS - # 322824
smcmanus@keker.com
LAUREN S. KANE - # 329375
lkane@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

Attorneys for Defendant DIALPAD, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| WILLIAM TERRILL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>DIALPAD, INC.,<br><br>Defendant. | Case No. 3:25-cv-04509-JD<br><br>**DEFENDANT DIALPAD, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**Pursuant to Fed. R. Civ. P. 12(b)(6).**<br><br>Date: November 13, 2025<br>Time: 10:00a.m.<br>Courtroom: 11—19th Floor<br>Judge: Hon. James Donato<br><br>Date Filed: May 28, 2025<br><br>Trial Date: Not Yet Set |

## TABLE OF CONTENTS

**Page**


I. INTRODUCTION ....................................................................................................1

II. BACKGROUND ....................................................................................................3

A. Plaintiff speculates that T-Mobile hired Dialpad to record, transcribe, and analyze calls to its customer service center without telling its customers. ....................3

B. On that basis, Plaintiff filed this putative class action asserting wiretapping and eavesdropping claims under the California Invasion of Privacy Act. ...........................3

III. ARGUMENT ....................................................................................................4

A. Plaintiff's entire action fails because he does not plausibly allege that Dialpad wiretapped or eavesdropped on his customer service call to T-Mobile.........................4

B. Plaintiff's entire action fails because T-Mobile and Dialpad's alleged conduct falls within CIPA's exemption for telephone companies and their agents. ...................6

C. Plaintiff's entire action fails because T-Mobile disclosed to Plaintiff that it would share his phone calls with third-party service providers like Dialpad. ...............9

D. Plaintiff's entire action fails because Dialpad lacked the requisite intent to willfully or intentionally eavesdrop on Plaintiff's customer service call. ...................10

E. Plaintiff's Section 631 claim separately fails for claim-specific reasons. ..................11

1. Plaintiff's Section 631 claim fails under the "party exception" rule. ................11

2. Plaintiff also does not adequately allege that Dialpad intercepted the contents of his customer service call to T-Mobile while "in transit." ................13

F. Plaintiff's Section 632 claim fails because he alleges no facts at all to support his allegation that his call to T-Mobile was a "confidential communication."............14

IV. CONCLUSION ....................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**


*Ambriz v. Google, LLC*,
2024 WL 3282521 (N.D. Cal. Jun. 20, 2024)....2, 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....4

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024)....11, 13, 14

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024)....*passim*

*Doe v. GoodRx Holdings, Inc.*,
2025 WL 2052302 (N.D. Cal. Jul. 22, 2025)....10

*Doe v. Kaiser Found. Health Plan, Inc.*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024)....11, 12

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)....11, 14

*Gibson v. Planned Parenthood Fed'n of Am., Inc.*,
2024 WL 4251892 (N.D. Cal. Jul. 2, 2024)....14

*Graham v. Noom*,
533 F. Supp. 3d 823 (N.D. Cal. Apr. 8, 2021)....11

*Hammerling v. Google LLC*,
2022 WL 17365255 (N.D. Cal. Dec. 1, 2022)....14

*Hammerling v. Google, LLC*,
2024 WL 937247 (9th Cir. Mar. 5, 2024)....10

*James v. Allstate Ins. Co.*,
2023 WL 8879246 (N.D. Cal. Dec. 22, 2023)....11

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023)....12

*Johnson v. Blue Nile, Inc.*,
2021 WL 1312771 (N.D. Cal. Apr. 8, 2021)....11

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002)....13

*Lopez v. Apple, Inc.*,
519 F. Supp. 3d 672 (N.D. Cal. 2021) .....11

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021).....13

*Perry-Hudson v. Twilio, Inc.*,
2024 WL 4933332 (N.D. Cal. Dec. 2, 2024).....9

*Reyes v. Educ. Credit Mgmt. Corp.*,
773 F. App'x 989 (9th Cir. 2019) .....9

*Rodriguez v. Google LLC*,
2022 WL 214552 (N.D. Cal. Jan. 25, 2022).....13, 14

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) .....2, 9, 10

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) .....13

*Williams v. DDR Media, LLC*,
2023 WL 5352896 (N.D. Cal. Aug. 18, 2023) .....11

*Williams v. What If Holdings LLC*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022).....11

*Yale v. Clicktale, Inc.*,
2021 WL 1428400 (N.D. Cal. Apr. 15, 2021) .....11

**State Cases**

*Rogers v. Ulrich*,
52 Cal. App. 3d 894 (1975) .....11

**State Statutes**

Cal. Pen. Code § 631..... *passim*

Cal. Pen. Code § 632..... *passim*

Cal. Pen. Code § 638.....7

Cal. Pub. Util. Code § 216 .....7

Cal. Pub. Util Code § 234(a).....7

**Regulations**

Cal. Pub. Util. Comm. Decision 20-04-008.....1, 7

Cal. Pub. Util. Comm. Decision 24-11-003 ....................................................................2, 8

**DIALPAD'S NOTICE OF MOTION AND MOTION TO DISMISS**

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on November 13, 2025 at 10:00 a.m., or as soon thereafter as counsel may be heard, before the Honorable James Donato in Courtroom 11, on the 19th Floor of the Phillip Burton Federal Building and U.S. Courthouse, 450 Golden Gate Avenue, San Francisco, California, 94102, Defendant Dialpad, Inc. ("Dialpad") will and hereby does move to dismiss the complaint filed by Plaintiff William Terrill ("Plaintiff") in its entirety and with prejudice for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The specific issues raised through Dialpad's motion to dismiss are as follows:

1. Whether Plaintiff's entire action fails because he does not plausibly allege that Dialpad ever provided the customer service telephone support that he challenges;
2. Whether Plaintiff's entire action fails because Dialpad is exempt from the California Invasion of Privacy Act as a telephone company and/or its agent.
3. Whether Plaintiff's entire action fails because it was disclosed that his personal information may be shared with third-party service providers like Dialpad;
4. Whether Plaintiff's entire action fails because Dialpad lacked the requisite intent to willfully or intentionally invade his privacy in view of its customer contract;
5. Whether Plaintiff has failed to state a claim under California Penal Code § 631;
6. Whether Plaintiff has failed to state a claim under California Penal Code § 632.

This motion is based on this notice of motion and motion, the following memorandum of points and authorities, Dialpad's request for judicial notice and the supporting declaration of Ian Kanig with the exhibits attached thereto, and on all pleadings and papers on file or to be filed in this action, on the arguments of counsel, and on any other matters properly before the Court.

Dated: September 15, 2025

KEKER, VAN NEST & PETERS LLP

By: */s/ Ian Kanig*
BENJAMIN BERKOWITZ
CHRISTINA LEE
IAN KANIG
SPENCER MCMANUS
LAUREN S. KANE

Attorneys for Defendant DIALPAD, INC.

## I. INTRODUCTION

Plaintiff William Terrill mistargets Defendant Dialpad, Inc. with putative class action claims under the California Invasion of Privacy Act ("CIPA") because he misread its website. Plaintiff alleges that non-party T-Mobile, a cellular telephone company, contracted with Dialpad to record, transcribe, and analyze calls to its customer service center. Dkt. No. 1 ("Compl.") ¶¶ 1–8. He claims that T-Mobile never told him that a company like Dialpad might have access to his customer service calls and, as a result, Dialpad unlawfully eavesdropped on his March 2025 customer service call to T-Mobile in violation of Sections 631 and 632 of the CIPA. *Id.* ¶¶ 8–12.[1]

The fundamental problem with Plaintiff's claims is that Dialpad has ***never*** provided any retail customer service telephone support to T-Mobile. Instead, as stated in the Dialpad webpage that Plaintiff incorporates into his complaint as the sole basis for this central allegation, Dialpad has a relationship with ***T-Mobile for Business***. *Id.* ¶ 1, n.1; Dialpad's Req. for Jud. Not. ("RJN"), Exs. A & B at 1 (Dialpad webpage).[2] Because Plaintiff does not allege that he has ever interacted with T-Mobile for Business, he fails to state any plausible CIPA claims against Dialpad. *See Doe I v. Google LLC*, 741 F. Supp. 3d 828, 838–42 (N.D. Cal. 2024) (dismissing CIPA claims as implausible where "documents incorporated by reference into the complaint do not support [the plaintiff's] assumption [of interception by the defendant]" but instead "appear to contradict it").

Moreover, even if Plaintiff had properly alleged that Dialpad provided the alleged services, Plaintiff's complaint still suffers from incurable legal defects that require dismissal.

**Exemption.** Plaintiff's action is barred by CIPA's exemption for telephone companies and their agents. CIPA does not apply to a "telephone company" or its "agents" that are acting "for the purpose of" "maintenance, conduct or operation of the services and facilities of the . . . telephone company." Cal. Pen. Code § 631(b); *see also id.* § 632(e)(1). T-Mobile is a wireless public utility telephone corporation. RJN, Ex. D (Cal. Pub. Util. Comm. Decision 20-04-008) at

---

[1] Dialpad has concurrently moved to compel Plaintiff's claims to individual arbitration under his retail customer arbitration agreement with T-Mobile. Dialpad brings this motion to dismiss in the alternative to its motion to compel individual arbitration in order avoid any claim of waiver.

[2] T-Mobile for Business resells Dialpad's services to its customers for use in ***their*** businesses. RJN, Ex. C. T-Mobile does not use Dialpad's services for ***any*** of its customer service lines.

2. Dialpad, too, is a public utility telephone corporation that offers VoIP telephone services. *Id.*, Ex. E (Cal. Pub. Util. Comm. Decision 24-11-003) at 18–19 & App'x D at 3. Thus, even if Dialpad had provided T-Mobile with the alleged telephone services, it is exempt from Plaintiff's CIPA claims as the agent of a telephone company that was allegedly acting for the purpose of maintaining, conducting, and operating T-Mobile's telephone services for its customers. *Ambriz v. Google, LLC*, 2024 WL 3282521, at *1 (N.D. Cal. Jun. 20, 2024) (dismissing CIPA claims on this basis). Dialpad is also exempt from Plaintiff's CIPA claims because Dialpad is a telephone company that was allegedly acting for the purpose of operating ***its*** telephone services. *See id.*

**Disclosure.** Plaintiff admits that T-Mobile told him when he called its customer service line that "we may record this call." Compl. ¶ 7. Plaintiff claims, however, that T-Mobile did not disclose his call may be "shared with Dialpad." *Id.* But T-Mobile told him that it would "share" and "disclose" his "[a]udio . . . information" with "[d]ata analytics providers" and "[o]ther service providers" "for a business purpose." RJN, Ex. F (T-Mobile's Privacy Policy) at 12–13. That broad and unambiguous disclosure would include Dialpad and the business purposes for which Plaintiff alleges that T-Mobile shared his customer service call. *See* Compl. ¶¶ 1–5, 24–29. This is fatal to Plaintiff's CIPA claims. *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 953–56 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) (dismissing CIPA claims on this basis).

**No intent.** Plaintiff also has not pleaded—and cannot plead—that Dialpad willfully or intentionally invaded his privacy, which is a required element of his CIPA claims. *See Doe I*, 741 F. Supp. 3d at 843–44 (dismissing CIPA claims on this basis). To the contrary, Dialpad's terms strictly require its customers to provide all necessary disclosures and secure customer consent before implementing Dialpad's telephone services. Kanig Decl., Exs. G & H at 4 (Dialpad's Acceptable Use Policy). There are no well-pleaded allegations that Dialpad intended otherwise.

**Claim-specific defects.** Plaintiff's CIPA claims also fail for claim-specific reasons. His Section 631 claims fail because (1) they are subject to CIPA's "party exception" rule and (2) his interception claim fails because he does not allege that Dialpad intercepted his call "in transit" but that T-Mobile later "transmitted" its contents to Dialpad. Plaintiff's Section 632 eavesdropping claim fails because he does not and cannot allege that it was a "confidential communication."

## II. BACKGROUND

### A. Plaintiff speculates that T-Mobile hired Dialpad to record, transcribe, and analyze calls to its customer service center without telling its customers.

Sometime in or around March 2025, Plaintiff alleges that he called a T-Mobile customer service line. Compl. ¶ 9. Plaintiff does not identify what customer service line he called, how he called, with whom he spoke, or what was said (if anything), except that T-Mobile discloses on such calls that "we care about your experience, so, we may record this call." *Id.* ¶¶ 1–11. In view of this disclosure, he agrees that he "provide[d] consent for the contents of his communications" to be used for T-Mobile's "internal training or quality assurance purposes." *Id.* ¶ 11. But he claims he "was not aware, nor did he have any reason to suspect, that his phone call was being surreptitiously transmitted to an unknown third party software analytics provider[.]" *Id.* ¶ 9.

Plaintiff now alleges, however, that Dialpad recorded, transcribed, and analyzed his customer service telephone call to T-Mobile because Dialpad's "Ai Contact Center" webpage includes a logo that says "T-Mobile for Business." *Id.* ¶¶ 1–11 & n.1; RJN, Ex. A. But Plaintiff does not allege that he called any phone number associated with T-Mobile for Business, that he has a T-Mobile for Business account, or that he has ever otherwise interacted with T-Mobile for Business. Nor does Plaintiff allege any facts to support his speculation that T-Mobile uses the recording, transcription, and call analytics products that are generally described on that Dialpad webpage on any of its customer service lines, whether for retail or business customers. That Dialpad webpage discusses a variety of its products, such as Dialpad Sell and Ai chatbots, that have nothing to do with incoming customer service calls. RJN, Exs. A & B. Indeed, as Dialpad's website elsewhere makes clear, Dialpad's partnership with T-Mobile for Business only allows it to resell Dialpad's services to its accountholders for use in ***their*** businesses. RJN, Ex. C. Thus, the only allegation behind Plaintiff's suspicion that Dialpad eavesdropped on his customer service call is a T-Mobile for Business logo on Dialpad's website that does not support this contention.

### B. On that basis, Plaintiff filed this putative class action asserting wiretapping and eavesdropping claims under the California Invasion of Privacy Act.

Because Plaintiff speculates that his customer service call with T-Mobile was recorded,

transcribed, and analyzed by Dialpad, he asserts putative class action privacy claims against Dialpad under Sections 631 and 632 of the CIPA. Compl. ¶¶ 48–60 (Section 631 wiretapping and interception claims); *id.* ¶¶ 61–69 (Section 632 eavesdropping claim). For those claims, Plaintiff seeks damages, declaratory and injunctive relief, and his attorneys' fees and costs. *Id.* at 14.

## III. ARGUMENT

### A. Plaintiff's entire action fails because he does not plausibly allege that Dialpad wiretapped or eavesdropped on his customer service call to T-Mobile.

Plaintiff's claims that Dialpad unlawfully eavesdropped on his customer service call to T-Mobile are predicated on his allegation that Dialpad provides customer service telephone support to T-Mobile. The ***only*** allegation that he pleads in support of that central component of his case is contained in the first paragraph of his complaint. There, Plaintiff alleges the following: "Dialpad developed and operates a conversation intelligence software-as-a-service ('SaaS') that it sells to, and partners with, third-party businesses (such as T-Mobile) so that those businesses can 'elevate every conversation, all from one Ai-powered customer communications platform." Compl. ¶ 1.

That allegation is supported by a single footnote that incorporates the "Ai Contact Center" webpage on Dialpad's website. *Id.* ¶ 1, n.1; RJN, Ex. A. That webpage is entitled, "Run a high-performing contact center. Empower your agents to exceed customer expectations with our real-time Ai-powered tools, coaching, and actionable insights." RJN, Ex. A at 1. Beneath that title is displayed a series of company logos, one of which is "T-Mobile for Business." *Id.* That is the ***only*** allegation in the complaint that tries to tie Dialpad to his T-Mobile customer service call. The remainder of Plaintiff's complaint consists of generic descriptions of Dialpad's services, including its call recording, call transcription, and call analytics services. *Id.* ¶¶ 24–29.

This is insufficient to state a plausible claim that Dialpad eavesdropped on Plaintiff's call. To state a plausible claim for relief, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. Proc. 8(a)(2)).

In this case, Plaintiff fails to allege any well-pleaded facts that raise more than a "mere possibility" that Dialpad provided telephone services for T-Mobile's retail customer service line. The Dialpad webpage he relies on to make that allegation suggests only that Dialpad has some unspecified relationship with T-Mobile for Business, with which Plaintiff does not allege that he ever interacted. RJN, Ex. A. Because Dialpad does not provide—and has ***never*** provided—any T-Mobile customer service telephone support, no amendment can cure this fatal defect.

Additionally, Plaintiff has not plausibly alleged that Dialpad's recording, transcription, and call analysis functions described in the generic product descriptions on Dialpad's website were implemented by T-Mobile on the customer service line that he allegedly called. Dialpad provides a variety of telephone services that do not implicate those incoming call functions, some of which are discussed on the same Ai Contact Center webpage that Plaintiff relies upon. For example, that webpage discusses Dialpad Sell, a "[c]loud-based sales outreach solution with Ai that automates playbooks, gives in-call coaching, and helps your team win." RJN, Ex. A at 6. It also discusses Ai chatbots, which operate over text messaging, not over incoming calls. *Id.* at 3.

For these reasons, Plaintiff's CIPA claims are even less plausible than the CIPA claims that another court in this District rejected that alleged undisclosed internet tracking. In *Doe I v. Google*, the plaintiffs alleged that several health care website operators had installed Google source code on their websites that allowed Google to intercept their private health information. 741 F. Supp. 3d at 836. The court rejected this interception allegation as implausible because the plaintiffs did not "explain how they have determined that their private health information has been intercepted by Google." *Id.* at 838. The plaintiffs had simply "assume[d] that because there is Google source code somewhere on the health care providers' web properties, that automatically results in Google intercepting any interaction the plaintiffs have had with that website." *Id.* That their complaint "relie[d] heavily" on Google's "generic product descriptions" that described the "various ways in which Google's products are capable of operating generally" compounded this pleading problem. *Id.* at 839. As a result, "the plaintiffs [we]re not merely assuming that Google source code is being placed on particular web pages[,] [t]hey [we]re also assuming that particular features of Google's products [we]re being enabled on those pages, based simply on the fact that

those features happen to be described in Google's generic product descriptions." *Id.* at 840. For these reasons, the court determined that the plaintiffs did not plausibly and adequately allege that Google had intercepted their private information and dismissed their CIPA claims. *Id.* at 843–44.

Here, Plaintiff has failed to allege well-pleaded facts showing that T-Mobile implemented ***any*** Dialpad telephone services on the customer service line that he allegedly called. The *Doe I* plaintiffs at least had alleged that Google's source code was present somewhere on the health care website that they had visited, even if they assumed it was present on the particular webpages on which they had entered private health information. *Id.* at 838. Worse still, the Dialpad webpage "incorporated by reference into [Plaintiff's] complaint do[es] not support [his] assumption [that Dialpad provides retail customer telephone services]" but instead "appear[s] to contradict it" by pointing to T-Mobile for Business rather than to T-Mobile's retail business. *See id.* at 838. This is just like in *Doe I*, where the plaintiffs incorporated materials showed that Google had instructed health care website operators not to install its source code on sensitive webpages. *Id.* Further, and also just like in *Doe I*, Plaintiff fails to allege any well-pleaded facts showing that Dialpad's specific recording, transcription, and analysis functions that form the basis for his lawsuit were actually implemented on the T-Mobile customer service line that he allegedly called. *See id.* at 840. In short, it is implausible speculation that Dialpad had anything to do with Plaintiff's call.

In truth, Dialpad has never provided any telephone support to T-Mobile customer service. Dialpad partners with T-Mobile for Business to allow it to resell Dialpad telephone services to T-Mobile for Business accountholders for use in ***their*** businesses. *See generally* RJN, Ex. C. Even beyond that, T-Mobile for Business accountholders first received access to Dialpad's Ai Contact Center services on March 14, 2025, *id.* at 1, so it is unclear whether those Dialpad services were used even in that unrelated capacity when Plaintiff allegedly called T-Mobile around March 2025.

The core of Plaintiff's complaint is implausible, and it should be dismissed with prejudice.

**B. Plaintiff's entire action fails because T-Mobile and Dialpad's alleged conduct falls within CIPA's exemption for telephone companies and their agents.**

Even if Plaintiff plausibly alleged Dialpad had intercepted his customer service call, his action fails for the equally fundamental reason that Dialpad is exempt from CIPA liability here.

CIPA provides that no telephone company or its agent can be held liable for violating Section 631 or Section 632 so long as it is acting for the purpose of operating a telephone company. Because Dialpad was allegedly acting as an agent of T-Mobile for the purpose of operating a telephone company, and is in fact a telephone company itself, it is exempt from the alleged CIPA liability.

Section 631 of the CIPA "shall not apply to" a "telephone company" or its "agents" "where the acts otherwise prohibited herein are for the purpose of . . . operation of the services and facilities of the . . . telephone company." Cal. Pen. Code § 631(b). This exemption imports its definition of "telephone company" from California Penal Code § 638, *id.* § 631(c), which in turn provides two definitions. The first definition is "every corporation or person owning, controlling, operating, or managing any telephone line for compensation within this state." Cal. Pen. Code § 638(c)(3) (as imported from Cal. Pub. Util Code § 234(a)). The second is "any other person that provides residential or commercial telephone service to a subscriber utilizing any of the technologies or methods enumerated [in Cal. Pen. Code § 638(c)(2)]." *Id.* § 638(c)(3). Those include "a telephone connected to the public switched telephone network, a cordless telephone, . . . a telephony device operating over the Internet utilizing voice over Internet protocol [VoIP], a satellite telephone, or commercially available interconnected mobile phone." *Id.* § 638(c)(2). Put simply, a company selling any common form of telephone services is a "telephone company."

Similarly, Section 632 of the CIPA "does not apply" "to any public utility . . . or to the . . . agents thereof, if the acts otherwise prohibited by this section are for the purpose of . . . conduct[] or operation of the services and facilities of the public utility[.]" *Id.* § 632(e)(1). While Section 632 does not define "public utility," the California Public Utilities Code defines public utilities to include "every" "telephone corporation" "where the service is performed for . . . the public or any portion thereof." Cal. Pub. Util. Code § 216. Thus, Section 632 applies the same as Section 631.

Pursuant to these provisions, Dialpad is exempt from any liability under Sections 631 and 632 of the CIPA even if it had provided the telephone services to T-Mobile that Plaintiff alleges.

***First,*** it is a matter of public record that T-Mobile is a public utility telephone company. RJN, Ex. D (Cal. Pub. Util. Comm. Decision 20-04-008) at 2. And Plaintiff alleges that Dialpad was acting as T-Mobile's agent by contract. Compl. ¶¶ 1–5 ("T-Mobile has aided, agreed with,

employed, and/or permitted Dialpad to monitor, read, record, learn the contents of, or otherwise intercept the conversations of their current and prospective consumers[.]"). Thus, for the purpose of this exemption, Dialpad was allegedly acting as the agent of a telephone company.

Plaintiff further alleges that Dialpad was providing customer support telephone services for T-Mobile and, for that purpose, recorded, transcribed, and analyzed his customer service call. *E.g.,* Compl. ¶ 3 (alleging that T-Mobile uses Dialpad's services for its "customer service line" in order to "retrieve information, schedule service appointments, make changes to subscriptions, and receive additional forms of customer support"), ¶¶ 9–12 (alleging that Plaintiff's CIPA claims are predicated on his call to T-Mobile's customer service line), *id.* ¶¶ 24–29 (alleging that T-Mobile uses Dialpad's customer support telephone services to record, transcribe, and analyze customer service calls for quality assurance business purposes). These allegations facially invoke CIPA's telephone company exemption. Dialpad was allegedly helping T-Mobile maintain, conduct, and operate its telephone services and facilities through its customer support line. *See Ambriz*, 2024 WL 3282521, at *1 (holding that Google's alleged recording, transcribing, and analysis of calls made to Verizon's customer service center fell within the scope of the exemption because they were acts done for the purpose of operating a telephone company's services and facilities). It does not matter that Dialpad's alleged customer support services are not "necessary" to maintain, conduct, and operate T-Mobile's telephone services. *Id.* at 2. "By its own terms, the statute does not contain a necessity requirement, imposing only a requirement that the wiretapping be 'for the purpose of . . . operation of the services and facilities of the . . . telephone company.'" *Id.* Thus, just as in *Ambriz*, this Court should dismiss Plaintiff's CIPA claims under this exemption.

***Second,*** Dialpad is also a public utility telephone company in its own right. RJN, Ex. E (Cal. Pub. Util. Comm. Decision 24-11-003) at 18–19 & App'x D at 3. Indeed, Plaintiff agrees Dialpad's services are offered "all from one Ai-powered customer communications platform," which is Dialpad's VoIP platform. Compl. ¶ 1. Thus, because Plaintiff alleges that Dialpad was acting for the purpose of operating its own telephone services and facilities for T-Mobile's use, Compl. ¶¶ 3, 9–12, 24–29, Dialpad is also exempt from CIPA liability on this separate basis. *See* Cal. Pen. Code §§ 631(b), 632(e)(1); *see also Ambriz*, 2024 WL 3282521, at *1.

### C. Plaintiff's entire action fails because T-Mobile disclosed to Plaintiff that it would share his phone calls with third-party service providers like Dialpad.

Even if Dialpad had provided the alleged customer support telephone services to T-Mobile, and even if Dialpad were not exempt from CIPA liability, Plaintiff's claims fail anyway. The simplest reason why is that T-Mobile disclosed to Plaintiff that his call would be recorded for quality assurance purposes, which is ***precisely*** the purpose that Dialpad was allegedly serving. If that disclosure were not enough standing alone, T-Mobile explicitly told Plaintiff that it would share his call with its service providers for business purposes, including for data analytics.

To succeed on a Section 631 claim, a plaintiff must prove that the defendant made an "unauthorized connection" with a "telegraph or telephone wire" or attempted to read or learn the contents of a wire communication "without the consent of all parties." Cal. Pen. Code § 631(a). Similarly, to succeed on a Section 632 claim, a plaintiff must prove that the defendant used an "electronic amplifying or recording device" to "eavesdrop" "without the consent of all parties to a confidential communication." Cal. Pen. Code § 632(a). Accordingly, "[e]ach [Section 631 and 632 CIPA] claim requires [a plaintiff] to plead (and ultimately prove) that he did not consent to [the alleged] interception." *Perry-Hudson v. Twilio, Inc.*, 2024 WL 4933332, at *2 (N.D. Cal. Dec. 2, 2024); *accord Smith*, 262 F. Supp. 3d at 955 (Section 631 claims require the plaintiff to plead lack of consent); *Reyes v. Educ. Credit Mgmt. Corp.*, 773 F. App'x 989, 990 & n.1 (9th Cir. 2019) (same for Section 632) (citing Judicial Council of Cal. Civ. Jury Instructions 1809).

Plaintiff admits that T-Mobile told him when he called its customer service line that "we care about your experience, so, we may record this call." Compl. ¶ 7. In view of this disclosure, Plaintiff agrees that he knew that T-Mobile would record his customer service call and use that recording for "quality assurance and/or training" purposes. *Id.* What he alleges that he did not know is that T-Mobile would use Dialpad's software to make that recording, transcribe it for a T-Mobile customer service agent to use, and analyze it for quality assurance purposes. *Id.* ¶ 11.

This is not true. In addition to T-Mobile's auditory disclosure that Plaintiff's call was being recorded, T-Mobile also informed Plaintiff when he created his T-Mobile customer account that it would "share" and "disclose" his "[a]udio, electronic, visual, or similar information" with

"data analytics providers" and "other service providers" "for a business purpose." RJN, Ex. F at 12–13. That broad and unambiguous disclosure would include Dialpad and the analytics services that Plaintiff alleges it provided to T-Mobile. *See* Compl. ¶¶ 1–5, 24–29; *see also Smith*, 262 F. Supp. 3d at 955 (broad disclosures in a Privacy Policy are enforceable against California privacy claims on a motion to dismiss); *Hammerling v. Google, LLC*, 2024 WL 937247, at *1–3 (9th Cir. Mar. 5, 2024) (same). Because Plaintiff was expressly informed that his call may be shared with any service provider for any business purpose, he cannot state any CIPA claim against Dialpad. *See Smith*, 262 F. Supp. 3d at 955 (dismissing with prejudice CIPA claims on this same basis).

**D. Plaintiff's entire action fails because Dialpad lacked the requisite intent to willfully or intentionally eavesdrop on Plaintiff's customer service call.**

Plaintiff's CIPA claims also fail because there is no well-pleaded allegation that Dialpad willfully or intentionally recorded his customer service call without his authorization. *See Doe I*, 741 F. Supp. 3d at 844 ("CIPA liability only extends to willful or intentional conduct[.]"). In cases like this, where a third-party service provider is the entity allegedly receiving unauthorized information, mere "awareness that [unauthorized] information is likely being transmitted" does not satisfy that strict standard and "is not the right way to think about intent" with a statute like CIPA. *Id.* at 840; *cf. Doe v. GoodRx Holdings, Inc.*, 2025 WL 2052302, at *8 (N.D. Cal. Jul. 22, 2025) (finding that the plaintiffs had adequately pleaded intent for their CIPA claims because they alleged "Defendants knew" their interceptions were "resulting [in] privacy violations").

The reason why Plaintiff cannot establish that Dialpad willfully or intentionally received unauthorized information is that Dialpad instructs its customers that, where required by law, they are "required to obtain consent from all parties to record a conversation" and "required to obtain[] all proper consents for transcription by you or transcription by Dialpad on your behalf." RJN, Ex. G at 4. But Plaintiff, despite alleging this agreement exists, Compl. ¶¶ 1–5, has not alleged any facts to suggest that T-Mobile or Dialpad willfully or intentionally breached their privacy duties.

This is materially similar to the facts set out in *Doe I v. Google*, in which another court in this District dismissed CIPA claims against a third-party service provider on this basis. 741 F. Supp. 3d at 844. Google, the third-party software provider, specifically instructed websites using

its source code not to share any health information with it. *Id.* Google thus lacked the requisite intent to violate the CIPA by receiving such health information. *Id.* at 840. The same principle applies here. "There is nothing inherently unlawful about [Dialpad] offering [telephone services to T-Mobile]." *See id.* at 841. Because Dialpad specifically instructed its customers to obtain all required consents before using its telephone recording, transcription, and analysis services, Plaintiff cannot plead the requisite scienter to support his CIPA claims. To be sure, Plaintiff does not allege that Dialpad had any knowledge that T-Mobile had failed to secure his consent before allegedly recording and transcribing his call. *See Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 684 (N.D. Cal. 2021) ("At the pleading stage . . . interception may be considered intentional 'where a defendant is aware of the defect causing the interception but takes no remedial action.'") (dismissing CIPA claims for failure to plead awareness of a defect in its disclosures) (quoting *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 815 (N.D. Cal. 2020)). Nor could Plaintiff make that allegation. T-Mobile discloses on its customer service calls and in its Privacy Policy that it may record them for quality assurance purposes and share them with service providers.

**E. Plaintiff's Section 631 claim separately fails for claim-specific reasons.**

**1. Plaintiff's Section 631 claim fails under the "party exception" rule.**

A party cannot wiretap or intercept its own communications under Section 631. *Williams v. DDR Media, LLC*, 2023 WL 5352896, at *4 (N.D. Cal. Aug. 18, 2023); *accord In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020); *Rogers v. Ulrich*, 52 Cal. App. 3d 894, 899 (1975)). Thus, as many courts in this District have held, a third-party service provider that receives a customer's end users' communications is not intercepting those communications; it is merely "an extension of" the customer using its services. *DDR Media*, 2023 WL 5352896, at *3; *accord Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1002–03 (N.D. Cal. 2024); *Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *18 (N.D. Cal. Apr. 11, 2024); *James v. Allstate Ins. Co.*, 2023 WL 8879246, at *3 (N.D. Cal. Dec. 22, 2023); *Williams v. What If Holdings LLC*, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022); *Yale v. Clicktale, Inc.*, 2021 WL 1428400, at *1, 3 (N.D. Cal. Apr. 15, 2021); *Johnson v. Blue Nile, Inc.*, 2021 WL 1312771, at *2 (N.D. Cal. Apr. 8, 2021); *Graham v. Noom*, 533 F. Supp. 3d 823, 833 (N.D. Cal. Apr. 8, 2021). This is now

known as the "party exception" rule, and it precludes Section 631 claims so long as the plaintiff does not plausibly allege that the third-party service provider is not subject to first-party control. *Kaiser*, 2024 WL 1589982, at *17. Where subject to such control, a third-party service provider is no different than a tape recorder used by a first party. *Id.* (citing *Rogers*, 52 Cal. App. at 899).[3]

There are no well-pleaded allegations in Plaintiff's complaint that Dialpad was acting as anything more than an extension of T-Mobile. He alleges that T-Mobile hired Dialpad to record, transcribe, and analyze customer service calls—using software, not human review—and send them back to T-Mobile for its own quality assurance purposes. Compl. ¶ 1. That alleged conduct falls squarely within the scope of the party exception rule, and does not suggest that Dialpad even had the capability of using the call records for its own purposes, notwithstanding Plaintiff's claim that Dialpad has used ***other*** call records to train its call analysis function. *See* Compl. ¶¶ 31–32 & n.17 (alleging "Dialpad has the capability to use the contents of conversations it collects through Services for its own purposes" because its call analysis function "is built on 'over seven billion minutes of conversational data.'"). That is not a plausible allegation that Dialpad had ***T-Mobile's*** authorization to use its customer service calls to train its call analysis function (or was otherwise acting outside the scope of T-Mobile's control after receiving its customer data). Instead, as Dialpad's Privacy Policy tells its customers, "[a]llowing your data to be used to improve Dialpad Ai is not necessary for using AI features, and you may set your Ai training preferences at any time." RJN, Ex. I at 5. Further, that AI training setting is ***turned off by default*** and data is ***never*** used with other customers. *Id.*, Ex. M at 1, 5. Because Plaintiff does not plausibly allege that T-Mobile ever used Dialpad's customer support telephone services, let alone allege that T-Mobile's Ai training preferences have ever permitted Dialpad to use its customer support call data with other customers, there is no reason why the party-exception rule does not apply with full force.

---

[3] Some courts have held that the party exception rule does not apply where the third-party service provider has the mere "capability" of using data that it receives for its own purposes. *E.g., Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023). This Court should not follow those cases because they are "inconsistent with" binding precedent from the Ninth Circuit. *See Kaiser*, 2024 WL 1589982, at *17 (rejecting *Javier* on this basis). Third-party service providers could ***always*** improperly use data they receive for their own purposes, so this interpretation of the rule would destroy it. Instead, "the critical question is the extent the third parties were subject to [a first party's] control and ability to limit the use of dissemination of the [] data." *Id.* at *18.

For example, in *Cody v. Ring*, another court in this District dismissed a Section 631 claim alleging that a third-party service provider providing an internet chatbot function to a website under the party-exception rule, despite the plaintiff's "generalized and vague" allegations that it had the capability of using the contents of those chats for its own purposes. 718 F. Supp. 3d at 1002–03. The plaintiff's "conclusory allegations" that the service provider was "harvesting the chat transcripts for valuable data" did not suffice, especially because the materials incorporated into the complaint failed to establish that it in fact had used the chats for another purpose. *Id.* Here, too, the complaint fails to show that Dialpad used T-Mobile's data for its own purposes.

**2. Plaintiff also does not adequately allege that Dialpad intercepted the contents of his customer service call to T-Mobile while "in transit."**

Plaintiff's unlawful interception claim under Section 631 also fails because he has not alleged that Dialpad "intercepted" his call "in transit" between his phone and T-Mobile's phone. *See* Cal. Pen. Code § 631(a). To the contrary, he alleges only that T-Mobile installed Dialpad's "software" on its customer support lines and then "surreptitiously transmitted [contents of calls] to Dialpad's servers, where it is processed and analyzed" and sent back to T-Mobile. Compl. ¶ 1.

That is not interception in transit. "[T]he crucial question under § 631(a)'s second clause is whether [a plaintiff] has plausibly alleged that [the defendant] read one of his communications while it was still in transit, **i.e., *before it reached its intended recipient***." *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021) (emphasis added); *see also Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (for a communication to be "intercepted," it must be "acquired during transmission, not while it is in electronic storage"). Thus, even allegations that a defendant "logs the data, and sends a second copy to itself, even when it is not supposed to," are insufficient to allege interception in transit. *Rodriguez v. Google LLC*, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) (dismissing Section 631 claim on this basis); *see also Cody*, 718 F. Supp. 3d at 1001 (dismissing Section 631 claim on this basis because the plaintiff's allegation that the intercepted communication was "first routed through [the defendant's servers]" was too "vague" to establish "how the software works or how the interception occurs"); *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 746 (N.D. Cal. 2023) (dismissing Section 631 finding that the

plaintiffs' allegations "do[] not indicate *when* the interception occurs . . . [and] does not dispel the notion that [the third party] receives the information 'after the chat reaches [the first party]'"); *Hammerling v. Google LLC*, 2022 WL 17365255, at *10 (N.D. Cal. Dec. 1, 2022) (same).

Plaintiff's allegation that T-Mobile intercepted his call using Dialpad's software and then transmitted it to Dialpad's servers "in real time" does not satisfy that strict gating element. *See* Compl. ¶ 1; *see also Hammerling*, 2022 WL 17365255, at *10 (rejecting as implausible the plaintiff's allegation that the defendant had intercepted "real-time data" "in transit" because he had failed to "plausibly allege any mechanism that would allow [the defendant] to do so") (citing *Rodriguez*, 2022 WL 214552, at *2); *cf. Facebook Internet Tracking Litig.*, 956 F.3d at 608 (holding that interception "in transit" under Section 631(a) includes, for example, a defendant's "simultaneous, unknown duplication and communication of [web-server] requests"). "Using the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible [the defendant] is intercepting [plaintiff's] data in transit." *Rodriguez*, 2022 WL 214552, at *2; *accord Cody*, 718 F. Supp. 3d at 1001. Plaintiff's interception claim thus fails.

### F. Plaintiff's Section 632 claim fails because he alleges no facts at all to support his allegation that his call to T-Mobile was a "confidential communication."

Finally, Plaintiff's eavesdropping claim under Section 632 fails because he has not alleged that his communication with T-Mobile customer support was "confidential." *See* Cal. Pen. Code § 632. He does not allege ***anything*** about the contents of his call (assuming he spoke to anyone at all), let alone that he communicated confidential information on that call. *See* Compl. ¶¶ 9–10. And nothing about the nature of a customer service call to a cellular telephone company permits the inference that confidential information was communicated based on the fact of the call alone. Thus, because Plaintiff's allegations are "too vague and general about [his] [call] communications to plausibly allege that [he] shared anything typically understood to be confidential," this Court should dismiss his Section 632 claim, just as it did in *Gibson v. Planned Parenthood Fed'n of Am., Inc.*, on indistinguishable grounds. *See* 2024 WL 4251892, at *2 (N.D. Cal. Jul. 2, 2024).

## IV. CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiff's action with prejudice.

Dated: September 15, 2025

KEKER, VAN NEST & PETERS LLP

By: */s/ Ian Kanig*
BENJAMIN BERKOWITZ
CHRISTINA LEE
IAN KANIG
SPENCER MCMANUS
LAUREN S. KANE

Attorneys for Defendant DIALPAD, INC.